**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CENTRAL DIVISION**

UNITED STATES OF AMERICA,

        Plaintiff,

vs.

JEROMY JOSEPH ACKERMAN,

        Defendant.

No. CR 11-3033-MWB

**MEMORANDUM OPINION AND
ORDER REGARDING EVIDENTIARY
ISSUE**

<u>FILED UNDER SEAL</u>

_____

**TABLE OF CONTENTS**

I.    **INTRODUCTION**..................................................................... 2
    A.    *Factual Background* ................................................... 2
    B.    *Procedural Background* .............................................. 4

II.   **LEGAL ANALYSIS** ............................................................ 6
    A.    *Rule 104 And Preliminary Questions Of Admissibility* ...................... 6
    B.    *The Statements At Issue* ............................................. 6
    C.    *Admissibility Of Statements Against Interest* ................................ 8
        1.    *Rule 804(b)(3) standards* ................................................ 9
        2.    *Analysis* ................................................ 12
            a.    *The admission of a transfer "off book" and without
                a background check* ............................................ 13
            b.    *The statement that Bryan called Ackerman to
                request return of the firearm and ammunition*............. 16
    D.    *Confrontation Clause Issues*................................................ 17

III.  **CONCLUSION** ................................................................. 20

In this felon-in-possession case, the prosecution asserts that it should be allowed to offer at trial testimony from a witness about certain statements that his brother, a federally licensed firearms dealer, now deceased, made about the sale of a firearm and ammunition to the defendant. The prosecution asserts that the witness's testimony about his brother's statements is admissible pursuant to the hearsay exception for statements against a declarant's interest and that admitting those statements would not raise Confrontation Clause concerns. The defendant counters that the full context of the statements demonstrates that they were not against the declarant's interest and, moreover, that they do raise Confrontation Clause concerns, because they were "testimonial."

## I.     INTRODUCTION

### A.     Factual Background

The parties agree that defendant Jeromy Joseph Ackerman was employed at the Loft Bar in Hancock County, Iowa. On the morning of June 20, 2010, one of the owners of the bar, Brett Fish, discovered damage to the glass in the front door of the bar and called the police to report a possible burglary. Ackerman points out that Brett Fish was also employed as a jailer with the Iowa Department of Corrections and that he had some law enforcement training. The parties agree that Brett Fish reviewed surveillance tape, which showed Ackerman in the bar after hours the night before. Ackerman asserts that he accidentally damaged the glass in the front door when he left the bar. The parties agree that Brett Fish also discovered a box of 9x18 ammunition in the bar and called the police to report that, as well. The police seized the ammunition found in the bar.

Apparently because of the unusual caliber of the ammunition, Brett Fish traced the ammunition to his brother, Bryan Fish, who was a federally licensed firearms dealer. On June 20, 2010, Brett told Bryan that Ackerman was a felon. The prosecution asserts that Brett will testify that Bryan then told him the following: (1) that he had sold Ackerman a firearm and ammunition "off book" and without running a background check on Ackerman; and (2) that, when Brett told him that he needed to "fix" things, Bryan called Ackerman to tell Ackerman that, because Ackerman was a felon, Ackerman should return the firearm and ammunition at once. Ackerman points out that the discovery file shows, and the prosecution has acknowledged, that Bryan also told Brett that he would not have sold Ackerman the firearm and ammunition if he had known that Ackerman was a felon. The parties agree that, after Bryan's call to Ackerman, Bryan reacquired the firearm and a second box of 9x18 ammunition.

At some point, the police were told that Bryan had sold Ackerman the firearm and ammunition. On June 24, 2010, the police recovered the firearm and the second box of 9x18 ammunition from Bryan at his home. In subsequent written and audio-recorded statements to the police, Prosecution's Exhibits 7 and 8, Bryan again stated that he would not have sold Ackerman the firearm if he had known that Ackerman was a felon and that, when Brett told him that Ackerman was a felon, he reacquired the firearm and ammunition from Ackerman.

Bryan died on February 22, 2011. Therefore, the source of any testimony about Bryan's statements to Brett will be testimony by Brett.

### B.     Procedural Background

Ackerman was originally charged with a felon-in-possession offense on August 24, 2011.  *See* Indictment (docket no. 2).  Subsequently, on April 24, 2012, Ackerman was charged in a Superseding Indictment (docket no. 36), with possession, from about May 1, 2010, until about June 24, 2010, of a FEG Hungarian 9x18 handgun, model PA 63, serial number L049215, and two boxes of Makarov 9x18 ammunition, after having been convicted of various felony offenses on May 29, 2001, all in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(1).  The Superseding Indictment also alleges that, upon conviction, Ackerman shall forfeit any firearms or ammunition involved in the violation of 18 U.S.C. § 922(g)(1), including, but not limited to, the firearms listed in the Superseding Indictment, pursuant to 18 U.S.C. § 924(d)(1), 26 U.S.C. § 5872, and 28 U.S.C. § 2461(c).  Trial on the felon-in-possession charge against Ackerman is currently set to begin on May 7, 2012.

In a sealed Trial Memorandum (docket no. 44), filed April 25, 2012, the prosecution asserts that three of Bryan's statements, to which Brett will testify, are admissible pursuant to Rule 804(b)(3) of the Federal Rules of Evidence.[1]  Somewhat more specifically, the prosecution argues that these statements are against Bryan's interest, because they would have jeopardized his status as a federally licensed firearms dealer and might have subjected him to federal prosecution.  The prosecution argues that other evidence, including Bryan's subsequent statements to the police, corroborate

---

[1] Bryan's statements *to police* that he told Ackerman that he needed to return the firearm and ammunition, because Ackerman was a felon, and that he would not have sold Ackerman the firearm and ammunition, if he had known that Ackerman was a felon, are reflected in recorded and written statements in Prosecution's Exhibits 7 and 8.  However, the prosecution does not seek to admit those exhibits at trial, because of the possibility that Bryan's statements to the police are arguably "testimonial."

the trustworthiness of Brett's recounting of Bryan's statements.[2]   The prosecution argues that testimony about these statements raises no Confrontation Clause issues, because the statements were not "testimonial."

Pursuant to an April 25, 2012, Order (docket no. 45), setting a deadline for a response to the evidentiary issue raised by the prosecution, Ackerman filed on May 2, 2012, a sealed Trial Memorandum (docket no. 57) disputing the admissibility of Bryan's hearsay statements to Brett.   Ackerman argues that the prosecution is attempting to leave out Bryan's statement that, if he had known that Ackerman was a felon, he would not have sold Ackerman the firearm.   Ackerman argues that this statement demonstrates that none of Bryan's other statements are against Bryan's interest, because they show that the "knowledge" element of an offense of selling a firearm to a prohibited person is lacking.   Ackerman also argues that the statement that Bryan supposedly made in his phone call to Ackerman raises several evidentiary problems, including who received the call and whether the call, in fact, was completed at all.   Ackerman also argues that the statements in question do raise Confrontation Clause issues, because Brett, the person to whom Bryan made the statements, was a jailer with the Iowa Department of Corrections with some law enforcement training, so that Bryan's statements to him were "testimonial" as part of an investigation of the sale of the firearm to Ackerman, they were obtained by Brett for the purpose of reporting them to the police, and a reasonable person would have recognized that they were likely to be given to the police for possible use in a criminal prosecution.

---

[2] As a "fall back" or alternative argument, the prosecution asserts that the statements may also be admissible pursuant to Rules 803(1) (present sense impression), (2) (excited utterance), or (3) (then-existing mental, emotional, or physical condition), depending upon what Brett's testimony shows about Bryan's demeanor when Bryan explained his potentially criminal conduct.

## II.    LEGAL ANALYSIS

### A.    *Rule 104 And Preliminary Questions Of Admissibility*

As a preliminary matter, I note that Rule 104 of the Federal Rules of Evidence provides, generally, that "[p]reliminary questions concerning . . . the admissibility of evidence shall be determined by the court. . . ." FED. R. EVID. 104.  Appropriate "preliminary questions" may depend upon such things as whether the factual conditions or legal standards for the admission of certain evidence have been met.  *See id.*, Advisory Committee Notes, 1972 Proposed Rule.  This rule, like the other rules of evidence, must be "construed to secure fairness in administration, elimination of unjustifiable expense and delay, and promotion of growth and development of the law of evidence to the end that truth may be ascertained and proceedings justly determined." FED. R. EVID. 102.  I conclude that preliminary determination of the admissibility of the evidence put at issue in the prosecution's Trial Memorandum will likely serve the ends of a fair and expeditious presentation of issues to the jury. Therefore, I turn to the admissibility of that evidence.

### B.    *The Statements At Issue*

I take a moment to clarify what statements the prosecution asserts are admissible. The prosecution has identified those statements, in the first instance, as (1) Bryan's admission to Brett that he had sold Ackerman a firearm and ammunition "off book" and without running a background check on Ackerman, and (2) that when Bryan phoned Ackerman, in Brett's presence, Bryan explained that, because Ackerman was a felon, Ackerman should return the firearm and ammunition at once.  *See* Prosecution's Trial Memorandum at 4.   Later in its Trial Memorandum, however, the prosecution identified the statements against interest to be (1) that Bryan sold the firearm and

ammunition to a felon, and (2) that he sold them off book without a background check. *See id.* at 6. This identification appears to subdivide the first statement initially identified into two and to ignore completely the second statement initially identified. In the portion of its brief addressing Confrontation Clause concerns, however, the prosecution clarified that it did not intend to offer the "arguably" testimonial statements that Bryan made to the police, but only "the testimony of Brett Fish recounting Bryan Fish's non-testimonial statements to him and to the defendant," *id.* at 8, which again appears to include the second statement initially identified.

Ackerman also recognized the statements at issue as the two initially identified by the prosecution. *See* Defendant's Trial Memorandum at 2. However, Ackerman's argument relies on Bryan's additional statement to Brett that he would not have sold the firearm and ammunition to Ackerman if he had known that Ackerman was a felon. Thus, Ackerman treats "as a whole" Bryan's entire statement to Brett about the sale of the firearm and ammunition to Ackerman. *See id.* at 3. Indeed, Ackerman never addresses the significance of Bryan's statement that the sale to Ackerman was "off book" and without a background check. Ackerman also professes (with some justification) to be unsure of the theory on which the prosecution offers Bryan's purported statement on the phone to Ackerman requesting that Ackerman return the firearm and ammunition, but asserts that, whatever the theory, there are evidentiary problems with identification of the person who received the call and whether the call was even completed. Thus, Ackerman does recognize that the second statement initially identified by the prosecution is at issue here.

I note that, at least as initially characterized by the prosecution, the first statement at issue is that "Bryan Fish admitted he sold the firearm and ammunition to defendant off book and did not run a background check on defendant." Prosecution's Trial Memorandum at 4. Thus, the statement does not indicate that Bryan said that he

sold the firearm and ammunition *to a felon*, but only that he sold it *to Ackerman*, "off book" and without a background check. Indeed, the parties do not appear to dispute that, at the time of the sale, Bryan did not know that Ackerman was a felon. I conclude that the first statement at issue is Bryan's statement that "he sold the firearm and ammunition to [Ackerman] off book and did not run a background check on [Ackerman]." *See id.* There does not appear to be any dispute that the second statement at issue is Bryan's statement, purportedly to Ackerman by telephone while Brett was present, "explain[ing] [that] because [Ackerman] was a felon, [Ackerman] should return the firearm and ammunition at once." *Id.* What does appear to be uncertain is the precise theory on which the prosecution contends that this second statement is admissible, an issue to which I will return below.

## C. Admissibility Of Statements Against Interest

The parties agree, and I find, that the question of the admissibility of Bryan Fish's statements, through the testimony of his brother, Brett, is controlled by Rule 804(b)(3) of the Federal Rules of Evidence, excepting from the hearsay rule statements against interest. Specifically, in the absence of a Rule 804 or other exception, the hearsay rule, Rule 802, would bar Brett's testimony that Bryan said "he sold the firearm and ammunition to [Ackerman] off book and did not run a background check on [Ackerman]." Prosecution's Trial Memorandum at 4. That statement is one not made while Bryan was testifying at Ackerman's trial and it is a statement offered to prove the truth of the matter asserted, that is, that Bryan sold the firearm and ammunition to Ackerman off book and without a background check. *See* Fed. R. Evid. 801(c) (defining hearsay). Similarly, in the absence of an exception, Rule 802 would bar Brett's testimony that Bryan called Ackerman by telephone while Brett was present, and "explained [that] because [Ackerman] was a felon, [Ackerman] should

return the firearm and ammunition at once." Prosecution's Trial Memorandum at 4. That statement is one not made while Bryan was testifying at Ackerman's trial and it is a statement offered to prove the truth of the matter asserted, that is, that Bryan asked Ackerman to return the firearm and ammunition. *See* FED. R. EVID. 801(c) (defining hearsay).[3]

### 1. *Rule 804(b)(3) standards*

Rule 804 defines "exceptions" to the hearsay rule, when the declarant is "unavailable." FED. R. EVID. 804. The specific exception relied upon by the prosecution is Rule 804(b)(3), which provides as follows:

> **(b) The Exceptions.** The following are not excluded by the rule against hearsay if the declarant is unavailable as a witness:
>
> * * *
>
> **(3) Statement Against Interest.** A statement that:
>
> > **(A)** a reasonable person in the declarant's position would have made only if the person believed it to be true because, when made, it was so contrary to the declarant's proprietary or pecuniary interest or had so great a tendency to invalidate the declarant's claim against someone else or to expose the declarant to civil or criminal liability; and
> >
> > **(B)** is supported by corroborating circumstances that clearly indicate its trustworthiness, if it is offered in a criminal case as one that tends to expose the declarant to criminal liability.

---

[3] The truth of whether or not Ackerman was a felon is not at issue, because the parties have stipulated, for purposes of Jury Instructions, that Ackerman was convicted of felony offenses in 2001.

FED. R. EVID. 804(b)(3); *id.*, Advisory Committee Notes, 2011 Amendments (noting that Rule 804(b)(3) was not restyled in the amendments to the Federal Rules of Evidence that became effective on December 1, 2011, because it had already been substantively amended, effective December 1, 2010); *id.*, Advisory Committee Notes, 2010 Amendments (noting that Rule 804(b)(3) had been amended "to provide that the corroborating circumstances requirement applies to all declarations against penal interest offered in criminal cases," thus establishing a "unitary" approach for all statements against interest in criminal cases, whether offered by the prosecution or the defendant).

The Eighth Circuit Court of Appeals has explained that "[f]or a statement to qualify under the Rule 804(b)(3) hearsay exception, [1] the declarant must be unavailable, [2] the statement must so far tend to subject the declarant to criminal liability that a reasonable person would not have made the statement unless he or she believed it to be true, and [3] corroborating circumstances must clearly indicate the trustworthiness of the statement." *United States v. Halk*, 634 F.3d 482, 489 (8th Cir. 2011) (citing *United States v. Bobo*, 994 F.2d 524, 528 (8th Cir. 1993)); *United States v. Ironi*, 525 F.3d 683, 686-87 (8th Cir. 2008) (also citing *Bobo*, 994 F.2d at 528, for these requirements). I note that the second and third requirements of this formulation for admissibility pursuant to Rule 804(b)(3) appear to be considerably more restrictive than the rule itself provides. The rule permits use of the purported statement against interest arising from *impairment of a proprietary or pecuniary interest*, *invalidation of a claim*, or exposure to *civil* liability, as well as exposure to *criminal* liability. *See* FED. R. EVID. 804(b)(3). The Eighth Circuit Court of Appeals recognized as much in *United States v. Shields*, 497 F.3d 789, 793 (8th Cir. 2007), where it noted that the statement in question, a statement purportedly invalidating the declarant's claim against the defendant for attacking him, would be sufficiently against the declarant's interest to

10

be admissible pursuant to Rule 804(b)(3) "if it was 'so far contrary to the declarant's pecuniary or proprietary interest' or tended 'to render invalid a claim by the declarant against another, that a reasonable person in the declarant's position would not have made the statement unless believing it to be true.'" 497 F.3d at 793. The rule also requires corroboration (a) only if the evidence is used in a criminal case, and (b) only if it tends to expose the declarant to *criminal* liability, *see* FED. R. EVID. 804(b)(3), not in *every* case or when it is against the declarant's interest for *any* reason, as suggested in *Halk*, 634 F.3d at 489. In other words, it does not appear that corroboration is required at all if the statement is used in a *civil* case, nor is corroboration required in a *criminal* case, if the statement is against the declarant's interest for a reason *other than* criminal liability.

Rule 804(a) establishes the requirements for unavailability of the declarant, including the declarant's death. *See* FED. R. EVID. 804(a)(4). As to the second requirement for admissibility pursuant to Rule 804(b)(3), where the statement is purportedly against the declarant's interest, because it may expose the declarant to criminal liability (*i.e.*, against the declarant's penal interest), "[o]nly the portions of an unavailable witness's statement that genuinely inculpate her are admissible," and "[i]n determining whether a statement is genuinely inculpatory, a court must examine the circumstances under which the statement was given." *United States v. Chase*, 451 F.3d 474, 480 (8th Cir. 2006). Thus, the second requirement may be met, for example, by an "explicit admission" of criminal conduct. *See Ironi*, 525 F.3d at 687. On the other hand, "[a] statement is not truly self-inculpatory if it merely attempts to shift blame or curry favor." *Chase*, 451 F.3d at 480. Where the statement is purportedly against the declarant's interest for a reason other than exposure of the declarant to criminal liability, the circumstances must show that the declarant appreciated that the statement was against his interest. *Shields*, 497 F.3d at 793. As to the third requirement,

"corroboration," "[w]hether corroborating circumstances clearly indicate the trustworthiness of the statement is a question of fact reviewed for clear error." *United States v. Cole*, 525 F.3d 656, 660 (8th Cir. 2008). Circumstantial evidence that contradicts the declarant's statement demonstrates that the circumstances do not clearly indicate the trustworthiness of the statement. *Id.* at 661 (finding that the circumstances did not clearly indicate the trustworthiness of the statements, where the declarant was concerned about protecting others from criminal liability when she inculpated herself and her assertion that drug paraphernalia was hers was contradicted by her own assertion that she was not a drug user and a urine test confirming she had no drugs in her system); *see also Ironi*, 525 F.3d at 687 (holding that a statement was not sufficiently corroborated to be trustworthy, where the statement was undermined by the declarant's own testimony at a plea hearing and the statement differed dramatically from a prior version).

### 2. *Analysis*

Ackerman concedes that Bryan Fish, the declarant of the statements at issue here, is dead and, therefore, "unavailable." *See* FED. R. EVID. 804(a); *see also Halk*, 634 F.3d at 489 (identifying "unavailability" as the first requirement for admissibility pursuant to Rule 804(b)(3)). Ackerman specifically contests the second requirement, the "against interest" requirement, however. *See Halk*, 634 F.3d at 489. Specifically, Ackerman argues that the statements in question are not against Bryan Fish's penal interest, because Bryan also told Brett Fish that he did not know that Ackerman was a felon.

### a. The admission of a transfer "off book" and without a background check

As to the first of the statements at issue here, the prosecution does argue that selling a firearm and ammunition to a felon would be against Bryan's interest, because it might have jeopardized Bryan's status as a federally licensed firearms dealer and might even have subjected him to federal prosecution. Ackerman is correct that 18 U.S.C. § 922(d)(1) provides, in pertinent part, that "[i]t shall be unlawful for any person to sell or otherwise dispose of any firearm or ammunition to any person *knowing or having reasonable cause to believe* that such person . . . has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year." 18 U.S.C. § 922(d)(1) (emphasis added). Thus, there is a "knowledge" requirement concerning the recipient's status as a felon for a § 922(d)(1) violation. *See, e.g., United States v. Haskins*, 511 F.3d 688, 692 (6th Cir. 2007) ("The statute itself requires only that the defendant know the firearm recipient is a felon."); *United States v. Peters*, 403 F.3d 1263, 1268 (11th Cir. 2005) (defining the elements of a § 922(d)(1) offense as including proof "that [the defendant] knew or had reasonable cause to believe that [the purchaser] had a prior felony conviction."). Nevertheless, Ackerman's entire "knowledge" argument is a red herring, where Bryan's first statement, at least as initially characterized by the prosecution, was not that Bryan admitted selling the firearm and ammunition *to a felon*, but that he admitted selling the firearm and ammunition *to Ackerman* (whom Bryan claimed he did not know was a felon) "off book" and without a background check.[4]   In other words, to the extent that the

---

[4] Moreover, even if the statement is purportedly against interest because it admits sale of the firearm and ammunition to a felon, the "reasonable cause to believe" alternative for the "knowledge" element of a § 922(d)(1) offense requires only that the accused "have knowledge of facts which, although not amounting to direct knowledge,

statement is "against interest," it must be because it admits the sale of a firearm and ammunition "off book" and without a background check, not because it admits a sale of those items to a felon.

Even apart from whether or not Bryan Fish knew that Ackerman was a felon, the record presented so far demonstrates that Bryan Fish's statement that he sold the firearm and ammunition to Ackerman "off book" and without a background check was "against interest." Pursuant to 18 U.S.C. § 923, a "licensed dealer," such as Bryan Fish, must maintain records of "sale, or other disposition of firearms . . . as the Attorney General may by regulations prescribe." 18 U.S.C. § 923(g)(1)(A); *see also* 27 C.F.R. §§ 478.124 and 478.125(e); *On Target Sporting Goods, Inc. v. Attorney General of United States*, 472 F.3d 572, 574 (8th Cir. 2007) (describing the record-keeping requirements imposed by the statute and regulations). Similarly, pursuant to 18 U.S.C. § 922(t) and 27 C.F.R. § 478.102, a licensed firearms dealer is required to perform a background check of a transferee before transferring a firearm. Violation of these regulations may result in revocation or non-renewal of a federal firearms license or civil fines of up to $5,000. *See* 18 U.S.C. § 922(t)(5); 18 U.S.C. § 923(d); 18

---

would cause a reasonable person, knowing the same things, reasonably to conclude that the other person was a convicted felon." *Peters*, 403 F.3d at 1269. Furthermore, the Eighth Circuit Court of Appeals has recognized that a "knowledge" element may be proved by evidence demonstrating "willful blindness," that is, closing one's eyes to circumstances that would otherwise have been obvious. *See, e.g., United States v. Willis*, 277 F.3d 1026, 1031-32 (8th Cir. 2002). Where, as here, § 922 also requires a "licensed dealer," such as Bryan Fish, to obtain a signed statement from the transferee that the transferee has not been convicted of a felony, *see* 18 U.S.C. § 922(s)(1)(A)(i)(I) and (s)(3)(B)(i), "willful blindness" as to the transferee's status as a felon could be inferred from failure to obtain such a statement. Thus, Bryan Fish's self-serving statement that he did not know that Ackerman was a felon does not necessarily demonstrate that he was not inculpating himself by admitting that he sold the firearm to Ackerman. *See Chase*, 451 F.3d at 480 (stating that a statement must be "genuinely inculpatory" to be "against interest").

U.S.C. § 923(e). These possible consequences are sufficient to invoke Rule 804(b)(3), even if they do not involve criminal liability. *See* FED. R. EVID. 804(b)(3)(A); *cf. Shields*, 497 F.3d at 793. Moreover, as the prosecution also points out, Bryan clearly understood the trouble that he might be in because of his failure to document the transfer properly or to perform the required background check, because he immediately attempted to "undo" the transaction by asking Ackerman to return the firearm and ammunition. *See Shields*, 497 F.3d at 793 (where the statement is purportedly against the declarant's interest for a reason other than exposure of the declarant to criminal liability, the circumstances must show that the declarant appreciated that the statement was against his interest).

Although corroboration is not required to secure the admissibility of a statement that is against interest for a reason other than the statement's exposure of the declarant to *criminal* liability, *see* FED. R. EVID. 804(b)(3)(B), there is corroboration of the first statement at issue here. As the prosecution points out, Bryan made essentially the same statement to the police, although that statement to the police is "arguably" not admissible. The truth of the statement that Bryan sold the firearm and ammunition to Ackerman, "off book" and without a background check, is also corroborated by evidence that the prosecution contends that it can produce that other witnesses saw Ackerman with the handgun and ammunition and even heard Ackerman brag that he had obtained the firearm and ammunition "off book" and without a background check. *Cf. Cole*, 525 F.3d at 660-61 (considering whether other circumstantial evidence contradicted or supported the statement against interest); *Ironi*, 525 F.3d at 687 (same).

Thus, I conclude that the first statement satisfies Rule 804(b)(3) requirements for admissibility.

### b. The statement that Bryan called Ackerman to request return of the firearm and ammunition

The second statement at issue here is Bryan's statement, purportedly to Ackerman by telephone while Brett was present, "explain[ing] [that] because [Ackerman] was a felon, [Ackerman] should return the firearm and ammunition at once." Prosecution's Trial Memorandum at 4. However, as Ackerman argues, the prosecution provides no clear explanation of how this statement was against Bryan's interest, within the meaning of Rule 804(b)(3).[5] The proponent of the evidence bears the burden to prove that the statement is against the declarant's interest as an essential element to qualify for a Rule 804(b)(3) hearsay exception. *Reed v. Thalacker*, 198 F.3d 1058, 1061 (8th Cir. 1999) (holding that, when the prosecution offers hearsay as evidence, it bears "the burden of demonstrating that a hearsay exception is applicable"); *Witham v. Mabry*, 596 F.2d 293, 298 (8th Cir. 1979) (holding that the proponent bears the burden of proving that the statement is against the declarant's interest as an essential element to qualify for a Rule 804(b)(3) exception). Moreover, as Ackerman argues, there are preliminary or foundational questions concerning admissibility of this statement that are not answered on the present record. For example, there is simply no evidence presented so far that Brett recognized Ackerman's voice on the telephone, any other evidence that the person that Bryan called was Ackerman, or that the call was even completed.

The prosecution has failed to show that the second statement is admissible pursuant to Rule 804(b)(3).

---

[5] Nor does the prosecution explain how this statement might be a present sense impression, admissible pursuant to Rule 803(1); an excited utterance, admissible pursuant to Rule 803(2); or a then-existing mental, emotional, or physical condition, admissible pursuant to Rule 803(3).

### D. Confrontation Clause Issues

Even if the first statement satisfies the Rule 804(b)(3) requirements, Ackerman disputes the prosecution's contention that there are no Confrontation Clause concerns with admission of that statement. More specifically, the prosecution argues that the statement is not "testimonial," because Bryan was not making a solemn declaration for the purpose of establishing or proving some fact in a criminal prosecution when he made the statement to Brett, and he was not bearing witness against Ackerman to law enforcement officers. Rather, the prosecution contends that he was simply explaining to his brother how he had sold the firearm and ammunition to Ackerman. Ackerman argues that the Confrontation Clause is implicated, because he contends that the primary purpose of the interrogation of Bryan by his brother, who was a jailer with the Iowa Department of Corrections and who had some law enforcement training, was to investigate the ammunition he found in the bar, after he had already called the police about a possible burglary. Thus, Ackerman argues that both Bryan and Brett would have known, or would have reasonably foreseen, that whatever Bryan said to Brett would likely later be reported to the police and used as evidence against Ackerman in a criminal prosecution. He argues that, under these circumstances, Bryan's statement was "testimonial," and should be barred by the Confrontation Clause.

"The Confrontation Clause of the Sixth Amendment . . . is implicated whenever a statement by an unavailable declarant is introduced into evidence at trial, and the defendant has not had an opportunity to cross-examine the declarant." *Bobadilla v. Carlson*, 575 F.3d 785, 788 (8th Cir. 2009). As the Eighth Circuit Court of Appeals succinctly explained in *United States v. Honken*, 541 F.3d 1146 (8th Cir. 2008),

> "The Sixth Amendment's Confrontation Clause provides that, '[i]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him.'" *Crawford v. Washington*, 541 U.S. 36, 42,

124 S.Ct. 1354, 158 L.Ed.2d 177 (2004) (quoting U.S. Const. [*1160] amend. VI). In *Crawford*, "the Supreme Court held a witness's out-of-court statements that are testimonial in nature are barred under the Confrontation Clause, unless the witness is unavailable and the defendant had a prior opportunity to cross-examine." *Middleton v. Roper*, 455 F.3d 838, 856 (8th Cir. 2006) (citing *Crawford*, 541 U.S. at 52–54, 124 S.Ct. 1354), *cert. denied*, 549 U.S. 1134, 127 S.Ct. 980, 166 L.Ed.2d 743 (2007). The *Crawford* Court defined "testimony" as "a solemn declaration or affirmation made for the purpose of establishing or proving some fact." *Crawford*, 541 U.S. at 51, 124 S.Ct. 1354 (quotations and alterations omitted). However, the Court "[left] for another day any effort to spell out a comprehensive definition of 'testimonial.'" *Id.* at 68, 124 S.Ct. 1354. The Court did provide some insight into what types of statements are "testimonial," explaining, "[w]hatever else the term covers, it applies at a minimum to prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations." *Id.* The Court also noted, "[a]n accuser who makes a formal statement to government officers bears testimony in a sense that a person who makes a casual remark to an acquaintance does not." *Id.* at 51, 124 S.Ct. 1354.

*Honken*, 541 F.3d at 1159-60 (footnote omitted) (considering whether certain maps showing the location of murder victims' bodies were "testimonial"). The Eighth Circuit Court of Appeals has also observed that "testimonial" statements include those "elicited in response to government interrogation whose primary purpose was to establish facts potentially relevant to a criminal prosecution." *United States v. Johnson*, 495 F.3d 951, 976 (8th Cir. 2007) (citing *Davis v. Washington*, 547 U.S. 813, 822 (2006); *see also Bullcoming v. New Mexico*, ___ U.S. ___, ___, 131 S. Ct. 2705, 2714 n.6 (2011) (noting, "To rank as 'testimonial,' a statement must have a 'primary purpose' of 'establish[ing] or prov[ing] past events potentially relevant to later criminal prosecution.'" (quoting *Davis*, 547 U.S. at 822)).

I find that Ackerman's contention that Bryan's statement to Brett was "testimonial" is strained, at best. I cannot find that Brett was acting in a law enforcement capacity when he heard Bryan's statement, even if Brett happened to be an Iowa Department of Corrections employee and happened to have some law enforcement training. Rather, he heard it while acting has Bryan's brother. Nor can I find that Bryan was making "a solemn declaration or affirmation made for the purpose of establishing or proving some fact" or a "formal statement" to a government officer; rather, his statement to Brett, his brother, about the circumstances under which he sold a firearm and ammunition to someone that Bryan claimed not to know was a felon was more in the nature of a casual remark to an acquaintance. *See Honken*, 541 F.3d at 1159-60. I find no hint in the circumstances of the statement, at least as they have so far been shown to me, suggesting that Bryan was "'bear[ing] testimony'" against Ackerman (or even against himself). *See Johnson*, 495 F.3d at 976 (quoting *Crawford*, 541 U.S. at 51); *Honken*, 541 F.3d at 1160 (citing *Crawford*, 541 U.S. at 51). To put it another way, the "primary purpose" of Brett's questioning may have been to determine whether the ammunition found in the bar had originated with Bryan, or even to determine whether Bryan had sold or given the ammunition or a firearm that used it to Ackerman, whom Brett had seen on the surveillance video. *See Johnson*, 495 F.3d at 976 (citing *Davis*, 547 U.S. at 822, for the "primary purpose" factor in the "testimonial" determination); *accord Bullcoming*, ___ U.S. at ___, 131 S. Ct. at 2714 n.6. It is a huge leap from the information available to the assumption that Brett's "primary purpose" was "to establish facts relevant to a criminal prosecution" of either Bryan or Ackerman or to assume that either Brett or Bryan had any intention that Bryan's statement would be given to and used by the police in an investigation of Bryan or Ackerman.[6]

---

[6] Indeed, the only information in the record—the inadmissible second hearsay

I do not find that the Confrontation Clause bars Brett's testimony that Bryan told him that "he sold the firearm and ammunition to [Ackerman] off book and did not run a background check on [Ackerman]." Prosecution's Trial Memorandum at 4.

### III. CONCLUSION

Upon the foregoing,

1. Brett Fish's testimony that Bryan Fish told him that "he sold the firearm and ammunition to [Ackerman] off book and did not run a background check on [Ackerman]" will be admissible at trial; but

2. Brett Fish's testimony that, in a phone call by Bryan Fish to Ackerman, while Brett was present, Bryan "explained [that] because [Ackerman] was a felon, [Ackerman] should return the firearm and ammunition at once" will not be admissible at trial.

IT IS FURTHER ORDERED that, to avoid exposure of potential jurors to information about excluded evidence, this ruling shall be sealed until ten days after

---

statement—suggests that the "primary purpose" of Brett's inquiry was to inform Bryan of the problem that he had created for himself by transferring a firearm and ammunition to Ackerman and to tell him to fix it, because it was purportedly Brett telling Bryan that he needed to "fix" things that prompted Bryan to call Ackerman to tell Ackerman that, because Ackerman was a felon, Ackerman should return the firearm and ammunition at once.

completion of trial or any guilty plea, unless a party files a motion within that ten-day period showing good cause why the ruling should remain sealed.

**IT IS SO ORDERED**.

**DATED** this 5th day of May, 2012.

MARK W. BENNETT
U.S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA